UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

Docket No. 11-061 (DRH)

UNITED STATES OF AMERICA,

- against -

VINCENT MCCRUDDEN,

                      Defendant.

REPLY BRIEF OF THE UNITED STATES

                      LORETTA E. LYNCH,
                      United States Attorney,
                      Eastern District of New York.

CHRISTOPHER C. CAFFARONE,
Assistant United States Attorney,
    (Of Counsel).

2

The government writes in response to McCrudden's brief, filed on January 26, 2015 ("Def. 1/26/15 Br."). The defendant repackaged and repeated many of the same arguments that he made in his prior two submissions. The government is not going to respond to those arguments and, instead, will limit the instant brief to arguments raised for the first time in the defendant's most recent brief.

After a hearing and two post-hearing briefs, McCrudden argues that government exhibits 6 and 27 should be stricken from the record because they are not charged in the violation and are unfairly prejudicial. Def. 1/26/15 Br. at 4-6. That argument fails. First, the defendant's argument is untimely. The defendant did not object to the admission of these exhibits at the hearing. Nor did he raise this objection in either of his two post-hearing briefs. Accordingly, McCrudden's argument should be rejected.

Second, even if this argument is procedurally proper—which it is not—it is unpersuasive. It is undisputed that when determining whether statements constitute true threats, the surrounding context is relevant. United States v. Turner, 720 F.3d 411, 422-23 (2d Cir. 2013); United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994). And the Second Circuit's decisions make plain that extrinsic evidence is admissible to determine whether a charged statement constitutes

3

a true threat. See, e.g., United States v. Sovie, 122 F.3d 122, 126 (2d Cir. 1997); United States v. Malik, 16 F.3d 45, 50 (2d Cir. 1994).

In Sovie, the defendant was charged with threatening his ex-wife in violation of 18 U.S.C. § 876(c)—the same charge here. 122 F.3d at 126. At trial, the defendant's two ex-wives—neither of whom was the object of the threat—testified that the defendant had physically abused them in the past. Id. The Second Circuit held that this testimony, which was far more prejudicial than the evidence here, was admissible to prove that a reasonable person would perceive the defendant's statements to be true threats. Id. at 126.

Here, government exhibits 6 and 27 are admissible because they provide meaning and context to the charged statements. Indeed, when interpreting McCrudden's statements, a reasonable person would find it germane that McCrudden had also written an email in which he vowed that "[t]he time will come when I will not write another word, and seek other methods of justice, which I am sure the media will once again cover." GX 6. This statement, which is dripping with violent overtones, clarifies his other statements making it clear that McCrudden's remarks constituted true threats. Indeed, the unavoidable implication is that if McCrudden was done writing words, to obtain justice he would employ action and vigilantism. Likewise, the probative value of McCrudden's statement that he was not going to tolerate federal judges preventing him from bringing

4

his cases and that the media would not write about all the legal avenues that he had pursued "but only write when someone like me violently responds to injustice and unfairness" is substantial. GX 27. Again, McCrudden's words conveyed a message of violence and provide meaning to the charged statements.

In addition, the probative value of these exhibits is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. This evidence is admissible so long as it is offered for a proper purpose and "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged.'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Where, as here, the uncharged acts are similar in nature to the charged acts, the evidence is admissible under the Rule 403 balancing test. See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction").

Here, as set forth above, the probative value of the evidence is significant to a reasonable person's interpretation of

5

the charged statements. The defendant's argument that the recipient of the emails was the media somehow diminishes the probative value (see Def. 1/26/15 Br. at 5-6) is unavailing. The probative value of the emails lies in providing meaning to McCrudden's other statements.

Additionally, there is little or no danger that the evidence relating to the uncharged statements listed above will unfairly prejudice McCrudden, as the uncharged conduct "'did not involve conduct any more sensational or disturbing'" than the charged statements. Pitre, 960 F.2d at 1120. Indeed, the language contained in government exhibits 6 and 27 is similar to that used in many of the other communications at issue. Compare GX 6 and 27 with GX 2 ("I could illegally assault you . . . for now, I write words . . . Be careful what you get back when you send a man to hell. In a way, it is liberating not having anything to lose"); GX 3 (dismissal of his civil complaint "will rule against access to courts and allow only for vigilantism"); GX 5 (cautioning that if the relief he sought was not granted, the only other means for him to "seek justice" would be "violence" and he was open to "illegal options"); GX 7 (discussing vigilantism and comparing Your Honor to a masked gunman and a thug); GX 8 (see below); GX 9 ("thank you for giving me the green light to have an 'illegal' recourse"); GX 10 ("you are clearly advocating violence . . . don't underestimate one

6

disgruntled, motivated mother fucker who has been wronged. That would be a mistake"). Accordingly, the prejudicial effect, if any, is minimal and is far less prejudicial than the domestic violence testimony that the Second Circuit permitted in Sovie.

The defendant next argues that the Second Circuit's decisions in New York v. Operation Rescue Nat'l, 273 F.3d 174 (2d Cir. 2001), United States v. Davila, 461 F.3d 298 (2d Cir. 2006) and Malik, 16 F.3d 45 demonstrate the importance of the recipient's reaction to a charged statement. Def. 1/26/15 Br. at 9-12. As an initial matter, the government previously addressed how Operation Rescue is distinguishable in its December 22, 2014 reply brief (at pp. 4-5) and will, therefore, limit its reply to Davila and Malik. The government agrees, as it did in its prior two briefs, that a recipient's reaction is pertinent; however, it is not dispositive and is not an element of the offense. Turner, 720 F.3d at 428-29; Malik, 16 F.3d at 49. Neither Davila nor Malik hold otherwise.

Additionally, Davila does not support McCrudden's position because in Davila, the Court did not examine the reaction of recipient until after it considered the meaning of the statements and the surrounding context. Indeed, the Second Circuit first held that when considering the context, a reasonable person could have concluded that the statements at issue were true threats. 461 F.3d

7

at 305.  Only after considering the statements, the surrounding context and reaching that conclusion, did the Second Circuit look to the recipient's reaction, which it held supported its conclusion.  Id.

Similarly, McCrudden's reliance on Malik is misplaced. In Malik, the charged statements were ambiguous.  16 F.3d at 50. Because of this, the Second Circuit examined the reaction of the recipients.  Id.  Here, the charged statements are not ambiguous. Indeed, as set forth in the government's December 16, 2014 brief, McCrudden wrote that: he was not going to tolerate federal judges preventing him from getting justice from the government officials who he believed ruined his life and his children's lives; he was going to hold them accountable; he was going to participate in complete and utter violence against federal judges; he had never hurt another human being, but that was going to change now; he was going to hunt them down; he repeatedly referenced violence and vigilantism; he explained that he was willing to explore illegal options to get the relief he sought; he warned federal judges that they should not underestimate him because he was a "disgruntled motivated mother fucker who has been wronged"; and he stated that he was going to "violently respond[]" to perceived injustices.  See Govt. 12/16/14 Br. at 26-27 (internal citations omitted).

8

The defendant also speculates that "the government did not perceive him to be making true threats yet, but, worried that he was on the path to becoming a true threat, preemptively acted." Def. 1/26/15 Br. at 13. Because that contention is entirely speculative and not supported by a scintilla of evidence, it should be ignored. To be clear, the government believes that McCrudden's statements constitute true threats. If it didn't, it would not have proceeded with the violation hearing or obtained a court-authorized warrant to search his home. McCrudden did not (and cannot) cite to any evidence to the contrary because no such evidence exists.

McCrudden further argues that the government's "escalation theory" raises Due Process concerns. Def. 1/26/15 Br. at 16-17. McCrudden misstates the government's argument that his conduct escalated. The government is not arguing that McCrudden is going to escalate to sending threatening communications. Rather, the government's position is that he has already escalated to that point. In the instant case, McCrudden began by sending vulgar, inappropriate communications then graduated to sending threatening communications, just like he did with the regulators. The government's fear is not that "someday Mr. McCrudden might begin issuing true threats," (Def. 1/26/15 Br. at 16), which he has already done, rather its fear is that someday McCrudden will begin doing what

he has repeatedly said he is going to do, that is, carrying out those threats or hiring someone to carry them out for him.

McCrudden further asserts—without support—that the Probation Department and U.S. Department of Justice are regulators, like the Federal Communications Commission, who were responsible for notifying him that he committed a crime, and government's failure to notify him that he had committed a crime immediately upon his commission of said crime raises Due Process concerns. Def. 1/26/15 Br. at 16-17. That argument is wholly without merit. McCrudden does not cite any case in support of his position. Due Process demands that the statutes that McCrudden was alleged to have violated are not void for vagueness—which McCrudden concedes (see Def. 1/26/15 at 16)—and that he was adequately notified of the allegations against him—which he does not contest. See United States v. McNeil, 415 F.3d 273, 276 (2d Cir. 2005). Both are satisfied here. The government was not required to advise McCrudden, or any other defendant on federal supervised release, every time he committed a crime. Moreover, by not arresting McCrudden immediately, the government was not rendering an opinion that his conduct was lawful, nor did it give rise to a Due Process claim. See United States v. Lovasco, 431 U.S. 780, 791-93 (1977) (holding that the government is under no obligation to file charges as soon as probable cause exists to charge

a defendant or even immediately after assembling evidence sufficient to establish a suspect's guilt beyond a reasonable doubt).

Finally, McCrudden contends that government exhibit 8 is "thoroughly political in nature" and does not contain a true threat. Def. 1/26/15 Br. at 18-20. His argument is unpersuasive. McCrudden's fourth attempt at interpreting his words is inconsistent with how a reasonable person would interpret the plain meaning of those words.[1] This is particularly so when government exhibit 8 is considered against the backdrop of McCrudden's other statements and the surrounding context. McCrudden was a disgruntled, desperate man with nothing to lose who repeatedly promised that he would not accept federal judges' refusal to allow him access to the courts. He was a man whose life and the lives of his children had been ruined. He was a man who repeatedly warned federal judges that he would seek any means to obtain justice, including illegal means, violence and vigilantism. Against that backdrop, a reasonable person would be terrified by government exhibit 8. McCrudden ignores that context and those prior statements. But a reasonable person would not (and could not) ignore those highly relevant facts. The only reasonable interpretation of McCrudden's pledge to go hunting, his declaration that "[he] never stole a dime from anyone, and never hurt another

---

[1] This is McCrudden's fourth attempt at providing a benign interpretation for these statements: the first attempt came when he testified at the hearing while the second and third attempts came in his two previously filed briefs.

11

human being.  But now, that will change" and all of the other statements in government exhibit 8, is that McCrudden's words constitute a threat of injury.

McCrudden's argument is further without merit because he again ignores his own testimony about these statements.  McCrudden testified that he "obviously wasn't comfortable with the language in it" and "[he] shouldn't have even written it.  [He] shouldn't have sent it."  T. 91-92.  While not dispositive, his testimony is a factor that the Court may consider in assessing whether his words are true threats.  The government submits that McCrudden's testimony regarding this exhibit is tantamount to an admission.  Even if it does not constitute an admission, his concession that he should not have written these words and that he was uncomfortable with the language, at a minimum, provides further support for the government's interpretation of his statements.

* * *

For the reasons set forth above and the government's prior two submissions, the Court should find McCrudden guilty of Charges One, Two and Three.

Dated: Central Islip, New York
       February 5, 2015

                LORETTA E. LYNCH,
                United States Attorney,
                Eastern District of New York.

By:        /s/
        Christopher C. Caffarone
        Assistant U.S. Attorney