UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                                    MEMORANDUM AND ORDER

          -against-                 CR-11-061 (DRH)

VINCENT P. MCCRUDDEN,

              Defendant.
------------------------------X
A P P E A R A N C E S:

For the Government:
     Loretta E. Lynch
     United States Attorney
     Eastern District of New York
     100 Federal Plaza
     Central Islip, New York 11722
        By:  Christopher Caffarone, A.U.S.A.

For Defendant:

     Abigail C. Field, Esq.
     P.O. Box 262
     27525 Main Road
     Cutchogue, New York 11935

HURLEY, Senior District Judge

          By a Violation of Supervised Release Report ("VOSR")

filed on November 6, 2014, Vincent P. McCrudden ("McCrudden" or

"defendant") was charged with three violations of his supervised

release by: (1) "attempting to influence an officer of the United

States (to wit, U.S. District and Magistrate Judge[s]) by

transmitting threatening communications, in violation of Federal

Law" ("Charge One"); (2) "mailing threatening communications, in

violation of Federal Law" ("Charge Two"); and (3) "fail[ing] to

follow the instructions of the probation officer" ("Charge

Three").  Nov. 6, 2014 VOSR at pp. 4, 10.

The conduct underlying Charges One and Two involves claimed violations of the following condition of McCrudden's supervised release: "The defendant shall not commit another federal, state or local crime."[1]  Id. at 4.

The predicate for the original Charge Three – i.e. the one just quoted as found in the November 6th VOSR – was McCrudden's alleged failure to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."  Id. at 10.  However, that charge was withdrawn by the government because, on further reflection, it appeared that McCrudden had not lied to his probation officer in the manner alleged nor had the probation officer directed him to stop his practice of sending obscene, often ominous letters to various judges in the Eastern and Southern Districts of New York as well as in the Second Circuit Court of Appeals.  Instead, it developed that the defendant was merely advised that his "current course of action was counterproductive," coupled with a

---

[1]  Although Charges One and Two allege that McCrudden violated his supervised release by committing new federal crimes, no criminal complaint nor indictment has been returned against the accused.  However this seeming anomaly does not preclude the government from proceeding in the manner it has selected.  United States v. Mosquera, 2013 WL 2396213 at *11 (E.D.N.Y. May 31, 2013, citing U.S. Sentencing Guidelines Manual § 7B1.1, Appl., n.1.

At the hearing, the government's burden was to convince me as the trier-of-fact "by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).

suggestion that he adopt a "more adaptive response" to the perceived injustices. Id. at 11. In any event, the original Charge Three was replaced with another Charge Three alleging that defendant further violated federal law by "transmitting in interstate or foreign commerce a threat to injure or kill another." Jan. 14, 2015 Amend. to the Nov. 6, 2014 VOSR at 1.[2]

As explained in the text, infra, the government has failed to establish that any of the subject undisputably vile, inane communications constitutes a violation of federal law and, accordingly, a violation of McCrudden's supervised release.

BACKGROUND

1. Defendant's Original Conviction

As accurately synopsized by the government in its post hearing brief:

> On July 18, 2011, the defendant pleaded guilty to two counts of transmitting threatening communications in interstate or foreign commerce, in violation of Title 18, United States Code, Section 875(c). See United States v. McCrudden, 11-CR-061(DRH) . . . . Specifically, McCrudden admitted that on September 30, 2010, he sent an e-mail to Dan Driscoll declaring that he had hired people to kill Mr. Driscoll (the "September

---

[2] The original VOSR was also supplemented by the addition of Charges Four and Five in the amended VOSR which relate to McCrudden's post incarceration contact with known felons and thereafter making material misrepresentations to his probation officer as to those contacts. Jan. 14, 2015 Amend. to Nov. 6, 2014 VOSR at 2-5. However as to Charges Three, Four and Five, the government has asked that those charges be held in abeyance pending the adjudication of Charges One and Two.

30 E-mail"). <u>See</u> Transcript from McCrudden's
Guilty Plea, dated July 18, 2011 (the "Guilty
Plea Transcript"), at 28-31. He further
admitted that between December 17, 2010 and
December 21, 2010, he posted an "Execution
List" on his website with the names of more
than 40 current and former officials of the
Securities and Exchange Commission ("SEC"),
CFTC, NFA and FINRA and offered a $100,000
reward for "personal information on the
people named on [his] site, and also the
validation and proof of punishment against
these criminals" (the "December 2010 Internet
Threat"). Guilty Plea transcript, at 25-28.
The defendant agreed that a reasonable person
would consider those postings to be threats.
Guilty Plea Transcript, at 26.

Gov't's Post-Hr'g Br., Statement of Facts, at unnumbered p.
1.

On April 6, 2012 the defendant was sentenced to a below
guideline range of 28 months incarceration to be followed by two
years of supervised release with one of the concomitant special
conditions being that he receive mental health treatment with an
anger management component.

His period of supervised release commenced in January
of 2013 and, but for the present VOSR petition, would have
expired in January of 2015.

2.  <u>Events Leading to Filing of November 6, 2014 VOSR</u>

McCrudden has been involved in federal litigation on
several fronts. In the criminal case before me,[3] he moved for
early termination of his supervised release pursuant to 18 U.S.C.

---

[3]  <u>United States v. McCrudden</u>, 11-CR-061(DRH).

§ 3583(e)(1), which application was denied by decision dated July 31, 2014.  In addition, he is a defendant in a civil case in this district brought by the U.S. Commodity Futures Trading Commission which is still in the discovery phase before Magistrate Judge Tomlinson.[4]  It also appears that he has or had one or more cases pending in the Southern District of New York and, on occasion, has sought relief from the Second Circuit Court of Appeals.

McCrudden's practice, upon receiving a judicial order or a decision with which he disagrees, is to respond via communications, containing purported true threats leveled against the issuing judge or judges.  As a result, the probation department sent me a document entitled "Report On Offender Under Supervision" in mid-October 2014.  In that communication, the Court was advised

> Since his commencement of supervised release, the offender has continued his campaign of sending provocative and ominous correspondence to various parties, including the U.S. Court of Appeals, U.S. District Court of the Southern District of New York and the U.S. District Court of the Eastern District of New York (including Your Honor). The Probation Department attempted to intercede on several occasions.  In response, the offender agreed to cease sending any ostensibly inappropriate correspondences. However, the offender reneged on his promise and renewed his campaign by sending numerous profanity laced and/or ominous correspondences.  In August 2014, the

---

[4] U.S. Commodity Futures Trading Commission v. McCrudden et al., 10-CV-5567.

offender informed the U.S. Court of Appeals
that "[i]f you don't do the right and legal
thing, well, I won't be writing anymore,
that's for sure.  Individual accountability
is the only thing that separates due process
from vigilantism."  In August 2014, the
offender sent email messages to Reuters News
Agency entitled "Project for Government
Reform: Revolution Required["], wherein he
commented that "faced with no power to
negotiate, the only available option is
complete and utter violence.  I am waiting
for that day to participate and go hunting."
The offender noted that "violence is the only
way."  In September 2014, the offender
responded to a Memorandum Order of the U.S.
District Court of the Southern District of
New York with the following warning; "don't
underestimate one disgruntled, motivated
mother fucker who has been wronged."

The Probation Department is concerned with
the offender's propensity to resort to these
explicit means of communication.  We would
respectfully request that a Status Conference
be scheduled to address whether the
aforementioned correspondences warrant the
initiation of violation of supervised release
proceedings.

Oct. 14, 2014 Report on Offender Under Supervision at 2.

That invitation was declined with the observation that it would

be inappropriate for me as the judge who would be called upon to

decide whether McCrudden violated his supervisory release, should

a violation petition be lodged, to participate in the charging

decision.  Instead, it was my view that that decision should be

made by the Probation Department.  Shortly thereafter, i.e. on

November 6, 2014, the initial petition charging violations of

supervised relief was filed.

3. <u>Issue of Recusal</u>

McCrudden has asked me to recuse from both his criminal and civil cases on numerous occasions.  In each instance, his request was denied.  However, upon the filing of the November 6, 2014 VOSR, the landscape changed as to his criminal case.  I was no longer simply the recipient of inappropriate letters but, to the extent it was charged that the letters contained true threats to my physical well being, I became a potential witness.  As a result, I resurrected the issue of recusal at the defendant's arraignment on November 24, 2014.  Hr'g Transcript ("Tr.") at 4.  However, after being advised that I would not be called as a witness, Tr. at 20-21, and receiving assurances from both the government and defense that each felt I should continue to preside over the matter, I elected to do so.  <u>Id.</u> at 6 (CJA counsel on behalf of McCrudden: "we [viz. McCrudden and counsel] both agreed that bringing a recusal motion was not in Mr. McCrudden's best interests").  The government, nonetheless, then asked that I rule on what was in essence at that point a non-existent recusal motion.  In response, I explained that had a recusal motion been made, it would have been denied.  Tr. 14-21.

Following the hearing on the petition, next discussed, and the initial round of post-hearing submissions, McCrudden asked that CJA counsel be removed, which was done.  Thereupon McCrudden, presumably with outside assistance from his family or

others, retained Abigail C. Field, Esq. On January 7, 2015, she appeared on his behalf and asked for an opportunity to submit additional briefing on the question of whether the subject communications were true threats and, thus, actionable as alleged in the VOSR.[5] For present purposes, it warrants mention that replacement counsel did not seek my recusal.

I have remained on the case based on my belief that I can be fair and impartial in adjudicating this matter and that a reasonable third party with full knowledge of the attendant facts would not reach a contrary conclusion even though I am one of the recipients of McCrudden's correspondence. Cf. In re Basciano, 542 F.3d 950, 956-58 (2d Cir. 2008). See 28 U.S.C. § 455.

THE VOSR HEARING

The VOSR hearing was held on November 24th and November 25th of 2014 on Charges One and Two of the violation of supervised release report dated November 6, 2014.[6] The prosecutor placed into evidence Government Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 26, 27 and 29 consisting primarily of allegedly threatening letters and e-mails sent by McCrudden. FBI Special Agent Robert Crisalli was then called to the stand. He

---

[5]  The final briefs were due and received on February 12, 2015.

[6]  Tr. at 10 (We are "go[ing] forward with charges one and two today.")  The viability of the original "Charge Three" was problematic as of November 24, 2014 and its replacement was not filed until well after the November hearing was concluded.

read portions of those exhibits into the record, thereby concluding the government's case-in-chief.

McCrudden testified for the defense. He admitted sending the letters and e-mails at issue. Tr. at 60-93, 99-112. When asked by his counsel on direct examination to explain his thought processes in selecting the bizarre verbiage found in the subject communications, he offered a generic explanation. Such usage was to draw attention to the message he was seeking to convey. He explained that he does not know "what Judge Hurley reads, what Judge Katzmann reads" regarding the submissions made by litigants. Tr. at 72. Therefore in an effort to increase the likelihood that they would actually read his papers, he sought to add "a little extra oomph" to "grab[] [their] attention." Id. He proffers that this motivation is evident "if you look at the overall body of [his] work." Id. He contends that his efforts were geared to "draw attention . . . to a cause, not just [his] but to [those of] other people [as well]." Id.

DISCUSSION

1. <u>Applicable Law</u>

As noted, Charge One alleges that between August 2013 and October 2014, McCrudden violated the terms of his supervised release by threatening to use force against federal judges in an effort to influence or intimidate the official acts of those

-9-

judges, in violation of Title 18, United States Code, Section
1503.  Section 1503 provides in relevant part:

> "Whoever corruptly . . . by any threatening
> letter or communication, endeavors to
> influence, intimidate or impede any . . .
> officer in or of any court of the United
> States . . . in the discharge of his duty
> [shall be guilty of a crime]."

18 U.S.C. § 1503(a).

Charge Two alleges that between the same dates, i.e.
August 2013 and October 2014, McCrudden violated 18 U.S.C. §
876(c) by mailing threatening communications to federal judges.
Section 876(c) provides that "[w]hoever knowingly . . . deposits
or causes to be delivered . . . any communication . . . addressed
to any other person and containing any threat . . . to injure the
addressee or of another [shall be guilty of a crime]."  18 U.S.C.
§ 876(c).

The background information and factual predicates as to
both Charges One and Two are the same, viz. the communications
sent by McCrudden as set forth in the government exhibits in
evidence.  Although the legal elements that the government must
prove vis-a-vis the two charges differ, common to both is the
pivotal issue of whether one or more of McCrudden's
communications during the charged time frame constitutes a "true
threat."  Watts v. United States, 394 U.S. 705, 708
(1969)(internal quotation marks deleted).

"[A] statute . . . 'which makes criminal a form of pure

speech, must be interpreted with the commands of the First
Amendment clearly in mind.'" United States v. Kelner, 534 F.2d
1020, 1026 (2d Cir. 1976) (quoting Watts v. United States, 394
U.S. 705, 707 (1969)). The Supreme Court in Virginia v. Black
held that "the First Amendment . . . permits a State to ban a
'true threat.'" 538 U.S. 343, 359 (2003). "'True threats'
encompass those statements where the speaker means to communicate
a serious expression of an intent to commit an act of unlawful
violence to a particular individual or group of individuals."
Id. "The speaker need not actually intend to carry out the
threat. Rather, a prohibition on true threats protect[s]
individuals from the fear of violence and from the disruption
that fear engenders, in addition to protecting people from the
possibility that the threatened violence will occur." Id. at
359-60 (internal quotation marks and citations omitted).
"This Circuit's test for whether conduct amounts to a true threat
'is an objective one – namely, whether an ordinary, reasonable
recipient who is familiar with the context of the [communication]
would interpret it as a threat of injury.'" United States v.
Turner, 720 F.3d 411, 420 (2d Cir. 2013) (quoting United States
v. Davila, 461 F.3d 298, 305 (2d Cir. 2006)). The relevant
context includes "the relationship of one threat to another,
repetition, and other statements near or at the time of the
threats." United States v. Sovie, 122 F.3d 122, 128 (2d Cir.

1997).  Moreover, "[i]n making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant."  United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994); see also New York v. Operation Rescue Nat'l, 273 F.3d 184, (2d Cir. 2001) ("proof of the threat's effect on its recipient is relevant to this inquiry").  Particularly, where threats are ambiguous, "the recipients' states of minds and their reactions" are particularly significant in "remov[ing] ambiguity by shedding light upon the contexts of the alleged threats."  Malik, 16 F.3d at 50.

    Finally it warrants underscoring that in endeavoring to determine which of the subject communications, if any, were criminal and thus violative of McCrudden's supervised release – when viewed from the prospective of "an ordinary, reasonable recipient," United States v. Turner, 720 F.3d at 420 – only the background or contextual information known by, and the utterances directed at the recipient of the threat may be considered.[7]  Simply put, a person cannot be threatened by information which is unknown to him or her.  And, for present purposes, what was known by the recipients of the alleged threats must be gleaned from the hearing record, i.e. the testimony given and exhibits received

_____

[7]  To the extent a recipient of a purported true threat is aware of threats directed to another or others from the same source, such information is germane as providing background and context.

into evidence.  That record is sparse.  It does not include testimony as to the reaction of any of the various judges targeted by McCrudden's comments.

2.  **The Court's Conclusion at the Bail Hearing That Defendant, if Released, Would Represent a Danger to the Community is of Marginal, if any, Relevance to the "True Threats" Issue**

There are numerous reasons to believe that McCrudden is a potentially dangerous individual.  Consider the following e-mail he sent to Daniel Driscoll on September 30, 2010:

> It wasn't ever a question of "if" I was going
> to kill you, it was just a question of when.
> And now, that question has been answered.
> You are going to die a painful death.  Why,
> because you deserve to and it should have
> been done a long time ago.  You have ruined
> too many lives and continue to expand your
> evil empire.  You know full well you are a
> bad guy and should not be surprised.  I am
> surprised no one has attempted it before.
> What you will be surprised about is how long
> its going to take you to die.  I have
> researched some talented people who have
> agreed to help me towards this end, for money
> of course.  They are trained processionals
> and it has cost me a lot of money, but it
> will be well worth it.  I won't be doing all
> the work, they have things they will do to
> you that will make you beg to be killed,
> shot, anything to get away from the pain.
> And then, I will come in for the last piece.
> You will ultimately die at my hands.  Your
> body will already be in parts when I am done
> with you, but that will be a head start
> because your body will never be found.  Maybe
> in little bits and pieces of course.  We have
> done research.  We know where you live now
> and what your travel plans are.  It can and
> will happen anytime now.  Why am I telling
> you in advance?  Because I am very confident
> in the group that has agreed to end your
> life.  They are very talented and resourceful

> people and they love their work. When
> presented with the reasons why you should
> die, and a little money, they actually said
> they are going to enjoy killing you. And the
> great thing is, you will be the first, but
> not the last.

Indictment 11 CR 061, ¶ 8; <u>see generally</u> (1) the July 18, 2001

transcript of defendant's guilty plea at pages 22, 23, 28, 29 and

30 for his admission, under oath, that he sent the subject e-

mail, and (2) his gratuitously given apology extended to victim

Driscoll during his allocution. July 18, 2011 Tr. at 29-30 ("And

I apologize to Mr. Driscoll and his family for any apprehension

that I may have caused them [attributable to the September 30,

2010 e-mail].").

Also consider the e-mail he wrote to his older brother

making reference to one of the financial regulators:

> My instincts just want to have one
> opportunity to bring a shotgun with me and
> relish in the fact that I could put a muzzle
> 6 inches away from his face and watch the
> fucking smirk wash off his fucking fat face
> as I pulled the trigger and watched in pure
> joy as his brains splattered all over his
> light blue and white sear sucker pants. I
> can't wait to get to sleep so I can dream of
> such happiness and joy that would bring me.
> Since I don't believe in God anymore, I would
> feel no sense of remorse which brings extra
> excitement.

GX 29; T. 113-15.

Although both of the above referenced items were

authored several years ago, his conduct on supervised release

vis-a-vis the letters and e-mails he has sent runs countered to

the notion that he has changed significantly for the better during the intervening period.  Rather it seems that the mind-set that he had then persists, and that he is in the early stages of the same course of escalating conduct that led to his underlying conviction.  That is the major reason he has been held without bond pending resolution of the pending matter.  See Nov. 17, 2014 Transcript of, inter alia, the detention proceeding.

McCrudden's dangerousness, however, does not, ipso facto, render his writings while on supervised release true threats.  Indeed, unless it may be determined by inference or otherwise from the VOSR hearing record that the current recipients of e-mails and letters from McCrudden were aware of such items as his e-mails to his brother and to Driscoll, his seemingly violent propensities are irrelevant as unknown to the intended victims.

3.  Analysis of Government Exhibits in Evidence

By way of format, the government exhibits in evidence have been divided into discrete groups based on the person or entity to whom the McCrudden communication was sent, beginning with those sent to me.  That will be followed by a discussion as to whether those communications, viewed either singularly or cumulatively, and in context, were true threats.  The same process will be repeated for the communications sent to the other judges and addressees.

a) McCrudden Communications to District
Judge Denis R. Hurley of the Eastern
District of New York

i. Underline{Exhibit 1}. Exhibit 1 consists of a covering letter dated November 17, 2013 addressed to myself and Magistrate Judge Kathleen Tomlinson of this Court.  In that letter McCrudden indicates that he has filed a "Federal Tort Claim" against the United States Attorney, the Department of Justice and the United States Marshal's Office and is researching the subject of whether he can commence a similar action against me.  Enclosed with the letter is a copy of a "Complaint of Misconduct" which was sent to the Clerk of the Court of the United States Court of Appeals and Senator Patrick Leahy of the Senate Judiciary Committee.  In the complaint, McCrudden indicates that: "I have nothing to lose.  I am writing this [letter] as a last resort that someone in Government will do the right thing.  If not, it looks like there are no legal remedies for Justice left."  Nov. 16, 2013 Compl. of Misconduct at 1.  Later in this communication he opines that I "deserve[] to have [my] ass kicked and [to be] imprisoned, never mind a polite request to have [me] fired."  Id. at unnumbered p. 6.  Neither of those two comments, though offensive, objectively viewed constitutes a threat under § 876(c) or § 1503 of Title 18 of the United States Code.

Obviously, the November 17th letter detailing McCrudden's research efforts as to whether I am subject to a

federal civil suit is not an actionable threat.  As to the copy of the Complaint of Misconduct enclosed with that letter, "an ordinary, reasonable recipient" of that document under United States v. Turner, 720 F.3d at 420, presumably would take notice early-on of the identity of the entities to which the complaint was directed, viz. the Second Circuit and the Senate Judiciary Committee.  From that, it appears that McCrudden was seeking their aid in addressing a perceived wrong.  Granted, his comments along the lines of having "nothing left to lose" if his grievances remained unresolved suggests the possibility, even the probability that at some point he will resort to non-legal remedies.  But what remedies, when, and against whom?

McCrudden's rant that I "deserve[] to have [my] ass kicked and to be imprisoned," while certainly unsettling, is akin to such unfortunate, but at times uttered political hyperbole as "he deserves to be shot."  Cf. Watts v. United States, 394 U.S. at 708.  The phrases "deserves to be" and "I am going to" convey markedly different messages.  The former phrase, i.e. the one used by McCrudden, even when placed in context is, at best, ambiguous.  But "ambiguous letters, standing alone, cannot establish a predicate for violating [an anti-threat statute]." United States v. Malik, 16 F.3d 45, 50 (2d Cir. 1994).  Such being the case, "proof of the effect of the alleged threat upon the addressee," while always relevant, becomes "highly relevant."

Id. at 49.

        The only information in the violation of supervised
release hearing record about the recipients' reaction consists of
McCrudden's belief that myself and Chief Judge Katzmann contacted
the United States Marshal in some fashion at some point following
receipt of one or more of the subject communications.  See
Gov't's Ex. 4, April 22, 2014 "petition [to] the judicial
counsel" at unnumbered p. 1.  Although hearsay may be admissible
in violation of supervised release proceedings, United States v.
Carthen, 681 F.3d 94, 99-100 (2d Cir. 2012), whether this
hearsay, once-removed, is properly before the Court is
questionable.[8]  See Graham, 4 Handbook of Federal Evidence,
Seventh Ed., § 602.1 at p. 47.  Assuming it is, however, it is
not particularly helpful.  Among other things, absent from the
evidence is the time lapse separating the receipt of a particular
letter and contact being made with the Marshal, the nature of the
communication between the two once contact was made, and the

_____

        [8]  Parenthetically, I did contact the Marshal following my
receipt of one of McCrudden's early letters and thereafter sent
several others to the Marshal's attention.  Why I did so is not
in the VOSR hearing record.  Inappropriate speculation gives rise
to several possible reasons such as I considered a forwarded
document a true threat, an arguable threat, or perhaps neither
but noteworthy, nonetheless, as evidencing a conceivable threat
materializing sometime in the future given the obvious rage
harbored by the possibly unhinged writer.  The point is that
contacts with the Marshal's Office, standing alone, though
certainly germane (cf. United States v. Malik, 16 F.3d at 49), do
not convert non-threats into true threats.

follow-up, if any, by the particular judge as to what was being done to address the situation.  This is a telling gap in the proof.  The following excerpt from the Second Circuit's decision in New York v. Operation Rescue National, is instructive:

> Melfi made two other comments which the District Court construed as threats.  On one occasion, she told a group of workers at PPR, "You won't be laughing when the bomb goes off."  The clinic worker who testified to this statement, waited two weeks before reporting the comment to the police.  Were it not for the fact that the recipient of this alleged threat reacted without apparent alarm, we would be more likely to conclude that this statement constituted a true threat.").

273 F.3d 184, 197 n.5 (2d Cir. 2001); see also United States v. Barcley, 452 F.2d 930, 933 (8th Cir. 1971), cited with approval in United States v. Malik, 16 F.3d at 50, emphasizing the importance of reaction evidence in an ambiguous threat case.

In sum, as the trier-of-fact, I find that government's Exhibit 1 does not constitute a true threat.

ii. Exhibit 2.  This exhibit entitled "Response to Ruling Dated December 11, 2013," similarly does not contain a true threat.  McCrudden expresses his dislike of me in no uncertain terms and puts forth the notion that the "United States Government and all of its tentacles have ruined [his] life and career for sport," coupled with the comment that I should "[b]e careful what you get back when you send a man to hell.  In a way, it is liberating not to have anything to lose."  Dec. 27, 2013

-19-

Letter at unnumbered p. 5-6.  Here again the verbiage used, while troubling, does not, objectively viewed, constitute a true threat in my judgment as the trier-of-fact.

        iii.  <u>Exhibit 6</u>.  This is a memorandum to the Media dated August 1, 2014, and entitled "Judge Denis Hurley and Federal Judges."  Its subject is my denial of his application, brought pursuant to 18 U.S.C. § 3583(e)(1), for early termination of his supervised release.  He maintains that

> [T]here is no separation of Government now
> and the Federal Judges are working hand in
> hand with law enforcement.  I will continue
> to push the envelope to evoke change and hold
> federal officials accountable even though I
> know I am risking my freedom again.  I refuse
> to tolerate a punk like Hurley operate[sic]
> outside of the law and outside of his
> employment . . . . The time will come when I
> will not write another word and seek <u>other</u>
> <u>methods of justice</u> which I am sure the media
> will once again cover.  For now, you have a
> chance of being advised of the process and
> provocation, not just the end result.

Aug. 1, 2014 e-mail to Media at unnumbered p.1 (emphasis added).

        As the sender of the e-mail memorandum, McCrudden identifies himself as the "Founder [of the] Project For Government Reform."

        Whether the referenced "other methods of justice" connotes the use of physical violence against me cannot be gleaned from the letter although that certainly would be a reasonable inference.  Is that sufficient to constitute a true threat?  That question defendant urges, calls for a negative

answer, citing the test articulated in <u>United States v. Kelner</u>,
534 F.2d 1020 (2d Cir. 1976).  Def.'s Dec. 16, 2014 Letter at 3-4
and 7.  In <u>Kelner</u>, the Second Circuit explained, albeit in
dicta:[9]

> "So long as the threat on its face and in the
> circumstances in which it is made is so
> unequivocal, unconditional, immediate and
> specific as to the person threatened, as to
> convey a gravity of purpose and imminent
> prospect of execution, the statute may
> properly be applied."

534 F.2d at 1027.

From a juxtapositioning of <u>Kelner's</u> specific criteria with the
amorphous, open-ended character of the subject comment it becomes
evident that McCrudden's musing about "other methods of justice"
is not actionable if that decision governs.

The government correctly notes, however, that the
continued viability of the <u>Kelner</u> standard is problematic given
<u>United States v. Turner</u>, 720 F.3d 411 (2d Cir. 2013).  In <u>Turner</u>,
the Circuit found that the guidance sought to be provided in
<u>Kelner</u> as to the characteristics of an actionable threat was
deficient as too narrowly drawn.  <u>United States v. Turner</u>, 720
F.3d at 423-24.  Moreover, the <u>Turner</u> Court instructs that the
thought that all threats must meet those characteristics to be
criminalized is not only inconsistent with Second Circuit case

---

[9]  The <u>Kelner</u> Court's "narrow construction of the word
threat" was "dicta."  <u>United States v. Turner</u>, 720 F.3d 411, 423-
24 (2d Cir. 2013)(internal quotation marks and citation omitted).

law but is also "contrary to the Supreme Court's conclusion in Black."[10]  Id. at 424.  Therefore, to the extent the suggestion is made that McCrudden's statements are not criminal based on Kelner, that suggestion is flawed.[11]

The question remains then whether any of the comments in government's Exhibit 6, viewed singularly or cumulatively and in context, constitutes a true threat.  Would a reasonable person in my position, viewing the situation objectively, be fearful? The mere fact that government's Exhibit 6 was sent to the media, rather than to me, obviously is not dispositive.  Thus in Turner, the defendant used his website and a shortwave radio station to broadcast his criminal message absent any direct communication with any of the three targeted judges.  Id. at 414 and 416. Similarly, "[a]n absence of explicitly threatening language does not preclude the finding of a threat."  Id. at 424, quoting United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994). Conversely, however, the absence of an explicit threat, as distinct from one that is implied, and the use of such language as "the time will come" suggests that McCrudden's August 1, 2014 message to the media might fall within the ambit of protected political hyperbole rather than true threats.  Which is to say,

---

[10]  Virginia v. Black, 538 U.S. 343 (2003).

[11]  The Court has been advised by defense counsel that McCrudden may have relied on Kelner in crafting the subject communications.  Def.'s Jan. 26, 2015 Reply at 6, n.8.

the scenario is ambiguous.  What was said on the subject of
ambiguity with respect to Exhibit 1 is equally applicable here
and is, thus, incorporated by reference.  <u>Supra</u> at 17-19.

Based on this record, the Court finds as the trier-of-
fact that Exhibit 6 has not been shown to be a criminal violation
as alleged in Charges I and II.

iv. <u>Exhibit 7</u>.  Exhibit 7 consists of an August 1,
2014 letter objecting to, inter alia, my July 31, 2014 Order
denying McCrudden's application for early termination of
supervised release, together with an enclosed copy of his letter
of the same date to the Second Circuit Council and the Senate
Judiciary Committee.

In the main both letters are devoid of anything
approaching a true threat with the arguable exception of comments
found in the concluding paragraph of the letter to the Council
and Senate Judiciary Committee.  That paragraph reads:

> As I wrote in my first letter to the Second
> Circuit Council, I am writing this letter and
> complaint as a last resort.  You now have a
> clear decision.  Do the right and proper
> thing and remove Hurley from my cases.  After
> 17 years, I am done writing now and have
> given more than ample opportunity for someone
> in Government to do the right and just thing.
> Congress has determined that no one is above
> the law.  This is your opportunity to prove
> that.  If you don't do the right and legal
> thing, well, I won't be writing anymore,
> that's for sure.  Individual accountability
> is the only thing that separates due process
> from vigilantism.

McCrudden's Aug. 1, 2014 Letter at 2.

This is a veiled threat, seemingly against "the Second Circuit Council."  The fact it is conditional in the sense that those individuals will not be harmed should they "[d]o the right and proper thing" as envisioned by McCrudden does not preclude such a finding.  But perhaps the target of the threat is me.  Who is the intended victim is open to debate.  And what precisely is being threatened should McCrudden's demands not be met?  Given the lack of clarity as to such matters and the resulting unresolved ambiguity, the Court finds that Exhibit 7 is not a true threat.

v. Exhibit 8.  Exhibit 8 is an e-mail sent from McCrudden to Thomson Reuters dated August 13, 2014 entitled "Project for Government Reform: Revolution Required."  Pertinent excerpts from that e-mail include:

> The luxuries of a so called rule of law and a safe haven currency are coming to a violent end soon.
>                     . . . .
>
> The theft of big corporations so the few can manipulate the many is also coming to an end. The legacy of Federal Judges blocking and tackling in favor of big Government and big corporations will also come to a violent end. How do I know?  Because I have read some history.  I don't know the form it will come, but its coming . . . .
>
>     The disparity of the US of not just wealth, but of public policy has been breached to the point of no return.  And the powers that be will not be satisfied and

greed will not end.  So, faced with no power
to negotiate, the only available option
is complete and utterance violence.  I am
waiting for that day to come to participate
and go hunting.

. . . I never stole a dime from anyone, and
never hurt another human being.  But now that
will change.  It will change because I have
no options.

. . . I have been through two criminal
trials, six Regulatory proceedings, a
diversion agreement, prison, and supervised
release and I want to share with my fellow
citizens what I have learned.  Violence is
the only way.

    So don't wait until the next black kid is
shot dead.  Don't wait until your house is
foreclosed on.  Don't wait until you are
fired.  Don't wait until the US defaults and
the 1% flee in their private jets to the
Cayman islands.  Don't wait until your son or
daughter is killed in Iraq, Iran, Syria or
Afghanistan to "protect the American way of
life."  Yeah, I know exactly what they mean
by that now.  No, don't wait.  Take to the
streets now.  Its already too late, but
better late than never.  Unfortunately
revolution is required. History doesn't lie.

Ex. 8 at 2-3.

The above is a First Amendment constitutionally
protected call for revolution by McCrudden.  As explained in
Brandenburg v. Ohio, 395 U.S. 444 (1969), "the constitutional
guarantees of free speech . . . do not permit a State to forbid
or proscribe advocacy of the use of force or of law violation
except where such advocacy is directed to inciting or producing
imminent lawless action and is likely to incite or produce such

action." Brandenburg v. Ohio, 395 U.S. at 447. Extolling "'the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.'" Id. at 448, quoting Noto v. United States, 367 U.S. 290, 297-98 (1961). The violation of supervised release hearing record lacks any evidence to suggest that McCrudden's message as to the need for a revolution had the potential of "inciting . . . imminent lawless action," no less was "likely" to produce that result. Brandenburg v. Ohio, 395 U.S. at 447. Indeed, the e-mail to Thompson Reuters apparently was never even disseminated to its customers. Accordingly the "inciting [riot]" exception to the Brandenburg rule prohibiting governmental efforts to suppress such communiques as government Exhibit 8 is inapplicable.

Simply put, the message sought to be conveyed by McCrudden in Exhibit 8 is protected speech, immune from criminalization as a matter of law.

vi. Exhibit 11. The first item in Exhibit 11 is a one page handwritten note "[f]rom the desk of Vincent McCrudden" concerning "[c]ase no. 02-13-90098." That case number pertains to McCrudden's "Judicial Conduct Complaint" against me. See Gov't's Ex. 4. It was sent to the Second Circuit. Tr. at 103. Therein, McCrudden asks three questions to wit "How much more do I have to tolerate?"; When will you do something?"; and "Are you

waiting for me to retaliate first?"  Given its brevity and absent

more information, I am not able to determine whether it is a true

threat despite its ominous tone.

The second item included within Exhibit 11 is a

document entitled "Defendant Affirmation Response to Clerk of the

Court[']s Certification of Default" which was sent to me by

McCrudden in October of 2014.  The primary subjects addressed

therein concern the plaintiff's efforts to obtain a default

judgment against him in <u>Commodity Futures Trading Commission v.</u>

<u>McCrudden et al.</u>, 10-CV-5567 pending in the Eastern District of

New York, and McCrudden's complaints about the protracted pace of

that litigation.  Absent from that document is any comment of a

threatening nature.

vii. <u>Exhibit 26</u>.  This exhibit consists of an

August 15, 2013 letter  to me from McCrudden complaining about my

handling of his request for a free transcript of his guilty plea

and of the resulting sentencing hearing.  To understand this

request, the reader is referred to docket nos. 98, 99, 100, 101,

102 and 103.  Suffice it to say for present purposes, there is

nothing in Exhibit 26 which may be deemed as a possible threat

except for some comments in the concluding paragraph which reads:

> Lastly, I have a lawsuit proceeding
> against the US Attorney's office, Loretta
> Lynch and the US Marshal[']s Office from the
> last time I communicated with your Court,
> only to have you "hire" out the US Attorney's
> Office and US Marshals to "intimidate,

threaten and harass" me.  I am not tolerating
this any longer.  I have asked you to
re[c]use yourself so I no longer have to deal
with you or this District.  I have done
everything in my power as a citizen to seek
justice.  If any law enforcement shows up at
my door next time, I will view it as a
personal threat against my safety and will
act accordingly.

Gov't's Ex. 26, McCrudden's Aug. 15, 2013 Letter to Denis Hurley
at unnumbered pp. 1-2.

The last sentence of the above quoted paragraph is
troubling in that he states that if any member of the "law
enforcement shows up at [his] door," he intends to assume a self
defense mode.  It is unclear what measures he might utilize for
that purpose.  Is he endeavoring to indicate that he would use
physical, possibly lethal force to repel the unwelcome visitor or
would he, e.g., place a call to the police?  To the extent his
intended response is ambiguous, it would not constitute a
violation of either Section 1503 or Section 876(c).  See United
States v. Malik, 16 F.3d 45, 50 (2d Cir. 1994).  "Where a
communication contains language which is equally susceptible of
two interpretations, one threatening, and the other
nonthreatening, the government carries the burden of presenting
evidence serving to remove that ambiguity."  United States v.
Barcley, 452 F.2d 930, 933 (8th Cir. 1971).

In Malik, clarification was found via "additional,
substantial evidence - the most significant of which was the

recipients' states of minds and their reactions" which provided context to the alleged threats.  United States v. Malik, 16 F.3d at 50.  Here no such evidence is in the record, thus making this case more akin to the scenario in Barcley.  In Barcley, a disgruntled client had written to his court-appointed appellate attorney, criticizing the attorney's performance and further stating:  "In point of fact, as soon as I get this case situated around in the position I want you are the first S.O.B. that will go, [the prosecutor] will [be] next."  United States v. Malik, 16 F.3d at 50, quoting United States v. Barcley, 452 F.2d at 933.

The fatal flaw in the Barcley prosecution leading to the reversal of his conviction was the absence of "substantial contextual evidence," Malik, 16 F.3d at 50, since neither of targets of the alleged threats "testified that he experienced fear upon reading the letter."  452 F.2d at 933-34.  Exhibit 26 similarly suffers from the lack of reaction testimony, understandably given the absence of a single or a few identifiable victims within the huge targeted class of "law enforcement [officers]."  As a result, the ambiguity remains, thus rendering the subject exhibit non-actionable in my judgment as the trier-of-fact.

### b) McCrudden's Letter to District Judge William H. Pauley of the Southern District of New York

Judge Pauley is the addressee of an August 13, 2014 letter, entitled "Plaintiff's Response to Judge[']s Order,"

dismissing McCrudden's complaint in 13-CV-8837(WHP). The letter, received into evidence as government Exhibit 9, though riddled with obscene expletives and mindless comments, does not constitute a threat as a matter of law.

### c) McCrudden's Letter to Chief Judge Robert A. Katzmann of the Second Circuit Court of Appeals

Government's Exhibit 4, consists of two documents, the first an April 22, 2014 letter addressed to "Judge Katzmann," bearing the caption "Re: Judicial Conduct Complaint, 02-13-90098-jm[,] Vincent McCrudden v. Judge Denis Hurley." It is an obnoxious missive with no discernable purpose other than to harass the addressee.

The second document in Exhibit 4 is a letter of the same ilk, also bearing the April 22nd date, "petition[ing] the judicial Council for review of the Chief Judge's order." Unnumbered p. 1 of Apr. 22, 2014 Petition to the Judicial Counsel. The last sentence of the petition reads "I have warned in the complaint that the years of abuse are escalating and I will not tolerate or accept unfair proceedings and/or decisions any longer." Id. at 2. However, the form of the threatened response is unclear and that ambiguity is not resolvable by reference to the reaction of Chief Judge Katzmann. Given the totality of the circumstances, I find as the trier-of-fact that Exhibit 4 is not a true threat.

### d) McCrudden's Letter to Circuit Judges Dennis

Jacobs, Rosemary S. Pooler and Deny Chen of
the Second Circuit Court of Appeals

Government Exhibit 5 consists of a letter written by
McCrudden dated July 17, 2014 to Circuit Judges Jacobs, Pooler
and Chin of the Second Circuit Court of Appeals.  Therein he
acknowledges receipt of the Circuit's "denial of [his] Writ of
Mandamus and/or Certiorari dated July 11, 2014."  July 17, 2014
Letter addressed to Judges Jacobs, Pooler, and Chin at unnumbered
p. 1.  McCrudden interprets the Circuit's denial as the
equivalent of "advocating" the use of "violence" as "the only
other means [by] which someone can seek justice."  Id.  "For at
the end of the day, [he opines], all you have is simply a man or
a woman, dressed under a black garb, taking the lives and freedom
away of another man or woman.  That's not law or a civil society,
that's chaos."  Id.  What follows are (1) an acknowledgment that
he has "writ[ten] threats or veiled threats" against members of
the judiciary which arguably constitutes an admission under
Federal Rule of Evidence 801(d)(2)(A), id. at unnumbered p. 2;
(2) a series of satirical comments condemning (a) the federal
judicial system generally, (b) the purported lack of
responsiveness of his congressional representatives to his plight
as "a target of the government," id., and (3) members of the
media who, he contends, "are really dumb people" who "do exactly
what the Government tells them to do 'or else,'" id..  This
letter, unlike most of his correspondence is relatively, though

not totally free of crude language and, more importantly, does not, as a matter of law, contain a true threat.

        e) McCrudden's Writings to District Judge
           Laura Taylor Swain of the Southern
           District of New York

      i. <u>Exhibit 10</u>. Exhibit 10 consists of McCrudden's "Affirmation Response to Order To Dismiss," submitted in the Southern District of New York case of <u>Vincent McCrudden v. Commoditys Futures Trading Commission et al.</u>, 13-CV-6930(LTS). In this September 10,2014 communication – which, incidentally, contains an abhorrently offensive gender-based epithet – McCrudden informs Judge Swain that "[by] your decision you are clearly advocating violence." McCrudden's "Affirmation Response of Order to Dismiss" at unnumbered p. 2. Towards the end his affirmation, McCrudden cryptically adds "But don't underestimate one disgruntled, motivated mother fucker who has been wronged. That would be a mistake." <u>Id.</u> at unnumbered p. 3. That statement, like so many of his others, lends itself to various interpretations only one of which entails the use of physical violence. I find that the resulting ambiguity and lack of evidence as to Judge Swain's reaction upon reading Exhibit 10 are fatal to a claim that the exhibit is a true threat.

      ii. <u>Exhibit 3</u>. Exhibit 3 also involves Judge Swain. It is McCrudden's "Affirmation [in] Opposition to

Defendant CFTC's Motion to Dismiss" filed in a case before that jurist which was ultimately dismissed. Absent from this seventeen page submission is any threatening verbiage. The closet McCrudden comes to crossing the line is his admonition to the judge that if she grants his adversary's motion to dismiss she "will rule against access to courts and allow only for vigilantism." Affirmation in Opposition to Defendant CFTC's Motion to Dismiss at 17. But that comment falls far short of constituting a true threat as a matter of law.

    iii. <u>Exhibit 27</u>. Exhibit 27 also mentions Judge Swain. It is an e-mail of September 8, 2014 from "Vincent McCrudden" to "Vincent McCrudden" entitled "Dismissal of Case against Finra, CTFC, NFA and NAC 13-CV-6930 (S.D.N.Y.)"[12]

---

[12] McCrudden's current counsel, Abigail C. Field, Esq. moves to strike Exhibit 27, as well as Exhibit 6, from the violation of supervised release hearing record or, in the alternative to afford each "very little weight." The basis for that application is twofold: (1) the e-mails "do not meet the criteria for allegedly criminal communications under the counts charged," and (2) "to the extent they could be relevant in interpreting some of the letters, their probative value is dwarfed by the prejudicial nature of their extra-inflammatory language specifically chosen to rouse the media." Def.'s Jan. 26, 2015 Reply at 1.

    Left unaddressed by the movant is the fact that both exhibits were received into evidence on consent. Tr. at 22-23. Replacement counsel's argument calling for the vacatur of that agreement between counsel is not convincing . However, as to the weight afforded to those exhibits, it is essentially nil given the absence of evidence that I knew of Exhibit 6 prior to the November 2014 hearing or that Judge Swain ever learned of the existence of Exhibit 27. Both exhibits were sent to the media, not the judges targeted in the respective communications. <u>See</u> salutation in Ex. 6 ("Dear Media") and, as to Ex. 27, <u>see</u> fourth

Gov't's Ex. 27.

Included within this exhibit are the following

statements:

> Today, Judge Laura Swain dismissed all
> liability and accountability for any actions
> of government or quasi government officials.
>
> Our courts have taken over the role, and now
> are not only Judges, but juries,
> executioners, God's [sic] and Kings.  So,
> there are no "fair forums and courts" as I
> wrote in 2010 and went to prison for.  This
> is proof of that.
>
> So, I am left to not be able to take my
> complaint to a jury of my peers, and a
> Government employee will make sure of that.
> The US Government is nothing more than a gang
> and this seriously needs to be addressed.  I
> am not going to tolerate it and you heard it
> here first.  The media of course will not
> write about all the legal avenues pursued
> and/or question the integrity of the process,
> but only write when someone like me violently
> responds to injustice and unfairness.
>
> Judge Swain[']s ruling itself is filled with
> one side of the argument.  Even as a
> plaintiff, she writes as if the DOJ, CFTC,
> SEC, Finra is writing it.  So, as a citizen,
> whether you are a defendant or plaintiff,
> there is no justice or due process.  I don't
> want anyone to say I didn't pursue legal
> recourse.  So, without due process or the
> ability to argue a case in front of a jury,
> what does a citizen do?  It is time to once
> and for all call what the US courts are and
> that is a complete farce.  As for me, they
> are not getting away with it and I will deal

---

line from bottom of Exhibit ("As for you, the media") and Dec.
16, 2014 then Defense Counsel Carman's Letter at 11-12 and
Replacement Defense Counsel Field's Jan. 26, 2015 Reply at 1.

with it in my own time.

As for you, the media, continue to write and profit at the misfortune of others. Continue your "faux" attempt at "questioning the process["]. Until they come knocking on your door one day and interrogate your son or daughter for simply questioning their authority and abuse of employment.

<u>The case is over, but it's not over for me. Stay tuned</u>.

Gov't's Ex. 27 (emphases added).

McCrudden's statements in Exhibit 27, taken together and at their core – though far less grievous and direct — bear some similarity to the statement made by the defendant in <u>United States v. Barcley</u>, 452 F.2d 930 (8th Cir. 1971), discussed earlier. And like <u>Barcley</u>, the reaction of the person said to be threatened is unknown and, in fact here, unlike in <u>Barcley</u>, the identity of the person or persons conceivably at risk is not discernable from the subject missive. Moreover, the approximate two month interval between the sending of the subject e-mail and the filing of the November 6th violation petition suggests that the communication was not viewed as a serious risk to the safety of a federal judge; otherwise, prompter action presumably would have been taken.

In sum, neither government Exhibits 10 nor 27 constitutes a true threat.

CONCLUSION

None of the items in evidence authored by McCrudden

qualifies as a "true threat" under the narrowly crafted, now abandoned Circuit standard articulated almost forty years ago in United States v. Kelner, 534 F.2d 1020, 1027 (2d Cir. 1996). Some of those communications, however, when evaluated under the more broadly encompassing, and currently controlling criteria set forth in United States v. Turner, 720 F.3d 411 (2d Cir. 2013) are right on the cusp of being criminal. Indeed, but for the absence of reaction testimony from the recipients of McCrudden's letters and e-mails, several in all probability would have been found to be criminal in nature as alleged and, thus, violative of his supervised release. However, based on the limited record before me, I conclude that the government has not established that the defendant has violated either charge 1 or charge 2 as set forth in the November 6, 2014 VOSR report.

Charges 3, 4 and 5 remain unresolved as explained earlier. Those remaining charges will be discussed at a status conference to be held before the Court at 2:00 p.m. on March 19, 2015.

SO ORDERED.

March 16, 2015
Central Islip, New York

_____/s/_____
DENIS R. HURLEY, U.S.D.J.